UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| OLD REPUBLIC INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 2:15-CV-281-JD ) |
| GARY/CHICAGO INTERNATIONAL AIRPORT AUTHORITY, | ) ) ) ) |
| Defendant. | ) |

# OPINION AND ORDER

This is an insurance coverage dispute between Plaintiff Old Republic Insurance Company ("Old Republic") and Defendant Gary/Chicago International Airport Authority ("Airport Authority"). Old Republic filed a complaint for declaratory relief and reimbursement of defense costs against the Airport Authority after the Indiana Department of Environmental Management ("IDEM") initiated an action against the Airport Authority in connection with pollution at the Gary/Chicago International Airport ("Airport") [DE 3]. Old Republic asks the Court to declare that, based on the pollution exclusion in the sixteen applicable insurance policies issued to the Airport Authority, it did not (and does not) have a duty to defend or indemnify the Airport Authority with respect to the IDEM action. *Id*. Thus, Old Republic believes that it should be reimbursed for what it paid to date on behalf of the Airport Authority to remedy the matter. *Id.* While the complaint alternatively seeks to limit the time frame of any coverage, this issue is not raised in Old Republic's Motion for Summary Judgment [DE 20]; rather, only the pollution exclusion is at issue in the motion, which is fully briefed [DE 21; DE 24; DE

25; DE 26] and ripe for ruling. For the reasons set forth below, the Court DENIES Old Republic's Motion for Summary Judgment.

## I. Facts

Based on the pleadings, there is no dispute that pollution and contamination conditions exist at the Airport [DE 3 at 3; DE 15 at 4]. As a result of those conditions, on September 8, 2014, IDEM sent a letter to the Airport Authority (who owns and operates the Airport) requiring the Airport Authority to investigate and submit a plan to contain or remediate the problem ("the IDEM action") [DE 15 at 4-5, 7]. Specifically, IDEM identified the presence of an oily sheen in one area and detected concentrations of benzo(a)pyrene, arsenic, and PCBs in another area [DE 15 at 4-5]. Since then, IDEM has required the Airport Authority to investigate the presence of fifty-two different pollutants/contaminants [DE 25-1, DE 25-2].

On September 9, 2014, the Airport Authority tendered a claim to its insurer, Old Republic, concerning the IDEM action [DE 25-3]. Old Republic agreed to defend the Airport Authority and hired counsel to assist with respect to the IDEM action, but it did so under a full reservation of rights [DE 21-19].

Old Republic issued a total of sixteen insurance policies to the Airport Authority, each providing coverage for a year and collectively covering the period from April 25, 1997 through April 25, 1998 and April 25, 2000 through May 25, 2015 [DE 3 at 9; DE 21-3 through DE 21-18; DE 24 at 3]. The policies at issue contained the following pertinent language:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" . . .

\*\*\*

2

> [or] "personal injury" or "advertising injury" to which this insurance
> applies. We will have the right and duty to defend any "suit" seeking
> those damages . . .
>
> ***
>
> All Coverages included in this policy are subject to the following
> exclusions.
>
> A. Noise and pollution and other perils.
>
>> 1. This policy does not cover claims directly or indirectly
>> occasioned by, happening through or in consequence of:-
>> . . .
>>
>>> (b) *pollution and contamination of any kind whatsoever*[1]
>>> . . .
>>
>> unless caused by or resulting in a crash fire explosion or collision
>> or a recorded in-flight emergency causing abnormal aircraft
>> operation.
>>
>> 2. With respect to any provision in the policy concerning our
>> duty to investigate or defend claims, such provision shall
>> not apply and we shall not be required to defend:
>>
>>> (a) claims excluded by Paragraph 1; or
>>>
>>> (b) a claim or claims covered by the policy when combined
>>> with any claims excluded by Paragraph 1 (referred to
>>> below as "Combined Claims").

[DE 21-3 through DE 21-18 (emphasis added)]. While the policies define certain terms, the policies do not define the terms "pollution" or "contamination." *Id*.

---

[1] The first two policies stated "pollution and contamination of any kind whatsoever," while the other fourteen policies stated "pollution or contamination of any kind whatsoever." [DE 21-3 through DE 21-18]. Neither party contends that the changed language affects the outcome of this case, and so for clarity's sake the Court refers to the conjunctive form of the policy language, or otherwise refers simply to the "pollution exclusion."

## II. Standard of Review

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. On the other hand, where a factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Sitting in diversity,[2] the Court will rely on the substantive law of Indiana and attempt to predict how the Indiana Supreme Court would decide the issues presented

---

[2] The pleadings establish that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 [DE 3 at 2-3; DE 15 at 3], and the case presents an actual controversy within the Court's authority pursuant to 28 U.S.C. § 2201. The parties do not raise a choice of law issue (and in fact rely on Indiana law in their briefs), and therefore, the Court applies federal procedural law and Indiana's substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010) (applying the law of the forum state because no party raised a choice of law issue) (citing *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir. 1985)). Contract interpretation, including a question of whether a contract is ambiguous, is a substantive issue, *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998); thus, Indiana state law applies to the issue presented in this case.

here. *See Lodholtz v. York Risk Servs. Grp., Inc*., 778 F.3d 635, 639 (7th Cir. 2015); *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999) ("Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently.").

### III. Discussion

In Indiana, insurance policies are governed by the same rules of construction as other contracts. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009). The Indiana Supreme Court has indicated how insurance policies are to be interpreted, as follows:

> Interpretation of an insurance policy presents a question of law that is particularly suitable for summary judgment. It is well settled that where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured. This is especially true where the language in question purports to exclude coverage. Insurers are free to limit the coverage of their policies, but such limitations must be clearly expressed to be enforceable. Where provisions limiting coverage are not clearly and plainly expressed, the policy will be construed most favorably to the insured, to further the policy's basic purpose of indemnity. Where ambiguity exists not because of extrinsic facts but by reason of the language used, the ambiguous terms will be construed in favor of the insured for purposes of summary judgment.

*State Auto. Mut. Ins. Co. v. Flexdar, Inc*., 964 N.E.2d 845, 848 (Ind. 2012) (internal citations and quotations omitted). Ambiguity exists when a policy is susceptible to two or more reasonable interpretations. *Everett Cash Mut. Ins. Co. v. Taylor*, 926 N.E.2d 1008, 1012-13 (Ind. 2010) (citing *Beam v. Wausau Ins. Co*., 765 N.E.2d 524, 528 (Ind. 2002)). The fact that the parties disagree over the meaning of the contract does not, in and of itself, establish an ambiguity. *Id*. (citing *Meridian Mut. Ins. Co. v. Cox*, 541 N.E.2d 959, 961 (Ind. Ct. App. 1989)). On the other hand, if insurance policy language is

clear and unambiguous, it should be given its plain and ordinary meaning. *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E. 2d 770, 771 (Ind. 2008) (quoting *Cabanaw v. Cabanaw*, 648 N.E.2d 694, 697 (Ind. Ct. App. 1995)). Moreover, the duty to defend is broader than an insurance company's coverage liability or its duty to indemnify. *Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co*., 665 N.E.2d 891, 892 (Ind. 1996).

Based on the fact that Old Republic's insurance policies explicitly exclude coverage for "pollution and contamination of any kind whatsoever," Old Republic contends that it does not have a duty to defend or indemnify the Airport Authority in relation to the IDEM action. The Airport Authority disagrees and believes that Old Republic owes coverage because the language of the pollution exclusion is ambiguous, so the exclusion cannot be enforced to negate Old Republic's duties under the insurance policy.

As recently noted in *St. Paul Fire & Marine Ins. Co. v. City of Kokomo*, No. 1:13-CV-01573-JMS, 2015 WL 3907455 (S.D. Ind. June 25, 2015) (Magnus-Stinson, J.), *reconsideration denied sub nom*., 2015 WL 7573227 (S.D. Ind. Nov. 25, 2015), Indiana utilizes a unique approach to determine the applicability of a pollution exclusion in an insurance policy dispute. *See St. Paul Fire & Marine Ins. Co.,* 2015 WL 3907455 at *5 (citing *Flexdar, Inc.*, 964 N.E.2d at 851). Unlike Indiana, in analyzing whether a policy excludes coverage for losses resulting from "pollutants,"[3] some jurisdictions employ a "literal" view of the absolute pollution exclusion and deem it unambiguous where a substance is acting in any manner as an "irritant or contaminant," while other

---

[3] The policies analyzed were different than the policy at issue here because they defined the term "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke vapor, soot, fumes, acids, alkalis, chemicals, and waste" (hereinafter referred to as the "absolute pollution exclusion").

jurisdictions employ a more "situational" approach and uphold the absolute pollution exclusion only in cases where the facts reveal "traditional environmental contamination." *See Flexdar, Inc.*, 964 N.E.2d at 850-51 (citing cases). Either of these approaches might support the outcome Old Republic seeks here.

However, Indiana applies basic contract principles and has consistently held that "the insurer can (and should) specify what falls within its pollution exclusion." *Flexdar, Inc.*, 964 N.E.2d at 851; *see Seymour Mfg. Co. v. Commercial Union Ins. Co.*, 665 N.E.2d 891 (Ind. 1996) (finding that the insurer had a duty to defend a solid waste disposer against an action by the EPA to clean up hazardous materials that leaked from containers, despite an exclusion for damage caused by enumerated pollutants without exception); *American States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996) (involving environmental contamination caused by the leakage of gasoline from a gas station's underground storage tanks, and finding that the absolute pollution exclusion's language was ambiguous, because if read literally it would negate virtually all coverage, including a situation where a visitor slipped on a grease spill); *see also Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37 (Ind. 2002) (rejecting the insurer's attempt to distinguish *Kiger* and *Seymour* on the basis that they involved traditional environmental cleanup for businesses regularly handling toxic substances, and finding that, because carpet glue fumes were not specifically identified in the absolute pollution exclusion, the exclusion was ambiguous and did not bar coverage for bodily injury caused to workers in the office building).

The Seventh Circuit has similarly recognized the Indiana Supreme Court's approach with respect to the specificity required in order for pollution exclusions to be enforced. *See Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 777 F.3d 415,

417 (7th Cir. 2015) ("Visteon wanted Indiana law to apply because Indiana does not enforce standard pollution-exclusion clauses, and . . . Indiana requires that for such a clause to be enforceable the policy must 'specify what falls within its pollution exclusion.'") (citing *Flexdar, Inc.*, 964 N.E.2d at 851); *see also W. Bend Mut. Ins. Co. v. U.S. Fid. & Guar. Co.*, 598 F.3d 918, 923 (7th Cir. 2010) (holding that although the definition of "pollutants" at issue was identical to the definition at issue in *Kiger*, because the pollution exclusion itself "clearly includes motor fuels" and the definition of the term "motor fuels" then "explicitly applies to gasoline," the plain language of the policy excluded coverage for damage arising from the gasoline leak at issue); *contra Scottsdale Indem. Co. v. Vill. of Crestwood*, 673 F.3d 715, 717 (7th Cir. 2012) (noting that the Supreme Court of Illinois has interpreted the pollution exclusion to be limited to harms arising from "traditional environmental pollution," as opposed to tort cases involving sudden occurrences which happen to be precipitated by a contaminant as discussed in *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1044 (7th Cir. 1992)).

Moreover, the Indiana Court of Appeals has also repeatedly and consistently applied the Indiana Supreme Court's precedent to find similar absolute pollution exclusion language ambiguous. *See State Auto. Ins. Co. v. DMY Realty Co., LLP*, 977 N.E.2d 411, 422 (Ind. Ct. App. 2012) ("*Flexdar* is precisely on point on this issue, and consequently we conclude that the pollution exclusions and endorsements . . . are ambiguous" and do not bar coverage for environmental contamination investigation and clean-up); *Indiana Farm Bureau Ins. Co. v. Harleysville Ins. Co*., 965 N.E.2d 62 (Ind. Ct. App. 2012) ("Because the language of the pollution exclusion at issue here is identical to

that at issue in *Kiger*, so is our holding. [The insurer] is not entitled to summary judgment on the basis that the pollution exclusion applies to gasoline leaks."); *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 935 (Ind. Ct. App. 1999) ("We follow the lead of our supreme court and conclude that the pollution exclusion in the policies here is ambiguous and is construed against [the insurer] to not exclude coverage for the environmental claims made against [the insured]," a business that manufactured and finished metal parts resulting in the release of chemicals into the environment).

Ultimately, the Indiana Supreme Court reasons that its approach "avoid[s] both the sometimes untenable results [of eliminating practically all coverage] produced by the literal approach and the constant judicial substance-by-substance analysis necessitated by the situational approach." *Flexdar, Inc.*, 964 N.E.2d at 850. Consistent with its own precedent, the Indiana Supreme Court reasoned in *Flexdar, Inc.* that whether the TCE contamination involved in the case would "*ordinarily* be characterized as pollution" is beside the point; rather, the question is whether the language of the policy is "sufficiently unambiguous to identify TCE as a pollutant." *Id.* at 851 (emphasis in original). Because the insurer's failure to be more specific rendered the exclusion ambiguous, the Court determined that the policy necessitated construction in favor of coverage. *Id.* at 851-52.

Old Republic argues that this case is distinguishable from the precedent set by the Indiana Supreme Court that the absolute pollution exclusion ambiguously attempts to negate coverage for the release or discharge of "pollutants" or "contaminants." Old Republic argues that unlike the absolute pollution exclusion at issue in those cases, its insurance policies clearly exclude coverage for any and all "pollution" and "contamination"—which indisputably exist on the Airport's property [DE 21; DE 26]. In

9

addition, Old Republic notes that its policies do not contain a self-limiting definition of the term "pollutants" which lack the specificity deemed necessary to eliminate coverage for particular contaminants; rather, its policies expressly exclude coverage for claims resulting from pollution and/or contamination "of any kind whatsoever."

No Indiana case has held that all pollution exclusions are unenforceable or has analyzed the exact pollution exclusion at issue here. However, it appears that the Indiana Supreme Court would likely disagree with Old Republic's position, which would (by analogy) essentially allow insurers to exclude coverage for damages caused by "any kind of pollutant whatsoever." This seems to be precisely what *Kiger* and subsequent Indiana judicial determinations sought to avoid.

The undersigned recognizes that *Kiger* and its progeny analyzed whether the absolute pollution exclusion sufficiently identified particular substances as "pollutants" so as to negate insurance coverage, whereas the exclusion at issue here denies coverage for "pollution" and "contamination." However, the rationale taken from Indiana's precedent is that in order for any pollution exclusion to be enforceable, Indiana requires the policy to specify what falls *within* the pollution exclusion—which Old Republic's pollution exclusion fails to do. *See Flexdar, Inc.*, 964 N.E.2d at 851; *Visteon Corp.*, 777 F.3d at 417. In other words, Old Republic's pollution exclusion does not explicitly indicate what constitutes "pollution" or "contamination" so that an ordinary policyholder of average intelligence would know to a certainty that Old Republic would not be responsible for damages arising out of the oily sheen, benzo(a)pyrene, arsenic, and PCBs discovered at the Airport. *See Flexdar Inc*, 964 N.E.2d at 851-52. In fact, Old Republic's pollution exclusion is even broader than the pollution exclusion clauses repeatedly

10

rejected by the Indiana courts, and not one of the fifty-two different pollutants/contaminants that the Airport is required to test for are identified as being excluded from coverage. As noted in *Flexdar, Inc.*, whether any of the substances found at the Airport would "*ordinarily* be characterized as pollution" is beside the point. 964 N.E.2d at 851 (emphasis in original). The question is whether the language of the policy is sufficiently unambiguous to identify the presence of the substances as pollution. *See id.; see also St. Paul Fire & Marine Ins. Co.,* 2015 WL 3907455 at *11 (holding that the general incorporation of state and federal environmental laws is insufficient to comply with Indiana's stringent standard that an insurance policy "specify what falls within its pollution exclusion.") (quoting *Flexdar Inc.*, 964 N.E.2d at 851-52).

Because the Court believes that the Indiana Supreme Court would determine that Old Republic's failure to be more specific (by its use of the broad terms "pollution" and "contamination" without more) renders its pollution exclusion ambiguous, the Court construes the insurance policy to further the policy's basic purpose of coverage. *See Bradshaw*, 916 N.E.2d at 166 (noting that the Indiana Supreme Court enforces limits on coverage where the policy unambiguously favors the insurer's interpretation, and that strict construction against the insurer derives from the disparity in bargaining power characteristic of parties to insurance contracts).

### IV. Conclusion

Based on the foregoing, the Court DENIES Old Republic's Motion for Summary Judgment [DE 20] concerning whether Old Republic has a duty to defend and/or indemnify the Airport Authority with respect to the IDEM action and whether it is entitled to reimbursement of the costs paid in connection with the IDEM action. Old

11

Republic is ORDERED to file a status report on or before August 19, 2016 indicating its intent to seek a declaration with respect to the period of coverage, as initially alleged in its complaint [DE 3].

SO ORDERED.

ENTERED: July 25, 2016

/s/ JON E. DEGUILIO
Judge
United States District Court